**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASMIN CABRERA | : | CIVIL ACTION |
| 103 Millview Court | : | |
| Lebanon, PA 17042 | : | |
| | : | DOCKET NO.: |
| Plaintiff, | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| RED LION HOME CARE, INC. | : | |
| 53 Rittenhouse Place | : | |
| Ardmore, PA 19003 | : | |
| and | : | |
| JOEL AYALA | : | |
| 53 Rittenhouse Place | : | |
| Ardmore, PA 19003 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Jamin Cabrera (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Plaintiff against Red Lion Home Care, Inc. and Joel Ayala (hereinafter collectively referred to as "Defendants") for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq*.), the Pennsylvania Minimum Wage Act ("PMWA" - 43 P.S. §§ 333.101—333.115), and the Pennsylvania Wage and Collection Law ("PWCL" - 43 P.S. §§ 260.1 *et. seq.*). As a direct consequence of Defendants' unlawful actions (including failures to properly pay wages and overtime), Plaintiffs seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the FLSA. This Court may also assert supplemental jurisdiction over Plaintiffs' state law claims, as they arise out of the same nucleus of operative facts as her federal law claims.

3.    This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.    Plaintiff is an individual with an address as set forth in the caption.

7.    Red Lion Home Care, Inc. (hereinafter individually referred to as "Defendant Red Lion") is a home care agency located at the above captioned address.

8.    Joel Ayala (hereinafter individually referred to as "Defendant Ayala") is upon information and belief Territory Manager and/or a high-level manager of Defendant Red Lion,

who oversees operations and exercises authority and control over the terms and conditions of employees (such as Plaintiff) including but not limited to terms of compensation, wages and pay.

9.     At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff has been employed by Defendants from in or about June of 2021, as a Home Health Aide.

12.     At all relevant times hereto, Plaintiff is primarily supervised by Case Manager, Peter Fret (hereinafter "Fret") and generally supervised by Fret's supervisor, Territory Manager, Defendant Ayala.

13.     Throughout her employment with Defendants, Plaintiff has been at all times an hourly, non-exempt and hard-working employee.

14.     At the time of her hire, Fret informed Plaintiff that she would be paid an hourly rate of $13.00 per hour for all work performed during her employment with Defendants.

15.     At the onset of her employment with Defendants, on or about June 11, 2021, Plaintiff signed a Red Lion Home Care Assignment Pay Worksheet (hereinafter the "Pay Worksheet").

16.     The aforesaid Pay Worksheet stated that for a temporary assignment, Plaintiff had 60 base hours, a pay rate of $13.00 per hour, and gross pay of $780.00.

17.    The Pay Worksheet also stated that for a permanent assignment, Plaintiff would be compensated at a pay rate of $13.00 per hour, while the base hours and gross pay blocks were blank.

18.    Finally, the Pay Worksheet provided that for permanent assignments, Plaintiff would be (1) "paid a regular base rate" if she worked 40 or less hours; and (2) paid both "a regular base rate and an overtime rate" if she worked over 40 hours each week.

19.    Throughout the entirety of Plaintiff's employment, she has been on a permanent assignment.   In particular, Plaintiff brought a permanent assignment/client with her when she began working for Defendants, and Plaintiff has maintained two clients at all relevant times hereto.

20.    Additionally, while employed with Defendants, Plaintiff's paystubs have been accessible through a payroll app called Viventium.

21.    On or about February 11, 2026, Plaintiff became aware when she changed her scheduled working hours that week and received her weekly compensation two days early that her payment amount did not appear to make sense.  Prior to this date, Plaintiff had not checked her paystubs on Defendants' Viventium application.

22.    Plaintiff complained to Fret that her pay did not look right, and at that point, Fret looked into Plaintiff's payroll history and discovered that she had never been paid her promised hourly rate of $13.00 per hour.  Fret was clearly surprised as he had hired Plaintiff at an hourly rate of $13.00 per hour and provided the same to management and payroll.

23.    Fret then informed Plaintiff that he was going to look into it and bring it to the attention of Defendant Ayala and upper management.

24.    A few days later, on or about February 13, 2026, Fret informed Plaintiff that upper management would be looking into it, and he also provided Plaintiff with her login information for the Viventium app.

25.    After Plaintiff began viewing her paystubs on the Viventium app, she discovered that despite being told by Defendants upon her hire that she would be paid $13.00 per hour for any work performed and signing the aforementioned Pay Worksheet stating that she would be paid $13.00 per hour, Defendants have ***never*** paid Plaintiff $13.00 per hour, until very recently (discussed further *infra*).

26.    Throughout her tenure with Defendants, Plaintiff consistently worked anywhere between 19 to 100 hours of overtime per week in order to complete her job duties.

27.    Because Defendants have never properly paid Plaintiff $13.00 per hour as promised upon her hire, Defendants have also failed to pay Plaintiff her full and proper overtime rate of $19.50 per hour, for all hours worked over 40 per week.

28.    Instead of paying Plaintiff an hourly rate of $13.00 per hour (as promised) for the entirety of her employment with Defendants, Defendants unilaterally changed Plaintiff's hourly rate without her consent and without providing any notice to her.

29.    Rather, from June 20, 2021, until Plaintiff reported Defendants payroll violations, Plaintiff was paid an hourly rate of $10.64 per hour and an overtime rate of $15.96 per hour for all hours worked over 40 each week.

30.    Beginning on or about February 16, 2026, however, Defendants began to pay Plaintiff at an hourly rate of $13.00 per hour.[1]

---

[1] Notably, beginning on or about February 14, 2026, Plaintiff has not worked any overtime as one of her clients has been temporarily hospitalized.  So, until Plaintiff's client returns to her home for care, and she resumes overtime hours, it is not apparent whether Defendants will properly compensate Plaintiff for her full overtime rate of $19.50 per hour.

31. Nonetheless, after Plaintiff reported her initial concerns to Fret, on or about February 17, 2026, Fret and Defendant Ayala came to Plaintiff's residence for a meeting regarding her pay discrepancies during which they explained to Plaintiff how Defendants receive money from a waiver program and how Plaintiff's compensation trickles down from that money, which made no legitimate sense.

32. Plaintiff was then given a host of confusing and fabricated explanations to try and make her believe that she was being paid correctly. For example, Plaintiff was informed her overtime hours made up for the difference between the reduced rate she was being paid and the $13.00 per hour rate that she was promised.

33. Plaintiff was further advised that Defendants could not pay her hire rate of $13.00 per hour because of the number of overtime hours she worked, as Defendants would "then not make any money."

34. Defendant Ayala informed Plaintiff that Defendants' upper management and lawyers had looked into the matter and that Plaintiff was being paid correctly. Yet, Defendants began compensating Plaintiff at an hourly rate of $13.00 per hour beginning on or about February 16, 2026, which directly contradicts this.

35. Notably, Fret never informed Plaintiff that she was mistaken about her pay rate or that Defendants had changed Plaintiff's pay rate for any legitimate business reason, rather Fret maintained and seemed confused about why Plaintiff was not being compensated at the $13.00 per hour rate he had hired her at.

36. Defendant Ayala, however, continued to try to convince Plaintiff that she had been paid correctly through several convoluted reasons, as set forth above.

37.    Shortly after Plaintiff informed Defendants' management of their unlawful payroll, wage, and overtime violations, in a belated effort to honor its state and federal wage and hour obligations, Defendants paid Plaintiff $335.97 for alleged overtime backpay, which is a very little drop in the bucket of what Plaintiff is owed.  Moreover, Defendants provided no comprehensible calculation of what the $335.97 purportedly covered.

38.    Furthermore, Defendants' aforesaid miniscule partial payment of wages owed to Plaintiff does not obviate the need for liquidated damages, as these damages are still owed for each and every penny of overtime pay she was not properly paid as mandated by applicable law.[2]

39.    State and federal laws permit Plaintiff to recover unpaid overtime for a period of 3 years.  Plaintiff's 3-year lookback is therefore from February 16, 2023, through February 16, 2026.  Plaintiff's 3-year look-back period includes 156.5 weeks.

40.    Upon information and belief, Defendants' aforesaid illegal practice of unilaterally lowering an employee's hourly rate (without providing any notice) in order to avoid paying proper overtime wages is a company-wide practice and multiple employees, including Plaintiff, within Defendants have been subjected to the same wage and hour violations as described above.

---

[2] *See, e.g., Solis v. Min Fang Yang*, 345 Fed. Appx. 35, 38 (6th Cir. 2009)(affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory"); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "[d]ouble damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden"); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014)(affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 35 (1st Cir. 2007)(affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 WL 864220, at *6(4th Cir. 2000)(affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999)(reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999)(affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

41.     Defendants have committed the following wage, hour, and overtime violations as to Plaintiff:

    a.  Defendants have intentionally not paid Plaintiff the correct pay rate for all hours worked on a weekly basis for almost the entirety of her tenure with Defendants, until on or about February 16, 2026;

    b.  Defendants have intentionally failed to pay Plaintiff time and one half her promised pay rate of $13.00 per hour for almost the entirety of her tenure with Defendants until on or about February 16, 2026; and

    c.  In order to avoid having to pay Plaintiff time and one half her promised hourly rate of $13.00 per hour, Defendants unilaterally and consistently lowered and/or changed her hourly rate without providing any notice.

42.     Defendants' actions have been willful and intentional, as management has perpetuated a longstanding illegal payroll scheme to deprive Plaintiff (and other employees of Defendants) of substantial compensation and continues to do so.[3]

43.     As a result of Defendants consistently, willfully, and knowingly failing to compensate Plaintiff her promised pay rate of $13.00 per hour and overtime rate of time and one half her promised pay rate of $13.00 per hour and its impact on Plaintiff's ability to financially care for herself and her family, Defendants have caused Plaintiff to suffer substantial damages from on or about June 20, 2021 until on or about February 16, 2026, in the form of unpaid wages and overtime compensation in violation of state and federal wage and overtime laws.

---

[3] Indeed, Defendant Red Lion has failed to correct their unlaw pay structure despite notice from prior lawsuit settlements. *See Lakisha Hogue, et. al v. Red Lion Home Care, Inc.,* DOCKET NO.: 2:21-cv-00485-TJS (2021) (collective action).

**COUNT I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Unpaid Overtime Compensation)**
**-Against both Defendants-**

44.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45.     At all times relevant herein, Defendants are, and continue to be, an "employer[s]" within the meaning of the FLSA.

46.     At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

47.     The FLSA requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

48.     At all times during her employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

49.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

50.     At the time of her hire, Plaintiff was informed that she would be paid an hourly rate of $13.00 per hour.

51.     Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay ($13.00 per hour) for every hour that she worked over 40 each workweek.

52.     Even when Plaintiff inquired with Defendants as to why she is not being paid the correct rate, Plaintiff was never informed by Defendants that $13.00 per hour was not her correct pay rate or that it had changed her pay rate.

53.     Instead, Defendants' management consistently tried to make up convoluted explanations as to why they believe they are in fact paying Plaintiff her agreed upon pay rate.

54.     It is abundantly clear that Defendants instituted an illegal payroll scheme wherein they unilaterally lower/change Plaintiff's pay rate (without providing any notice) in order to avoid paying proper overtime wages.

55.     As a result of Defendants' failure to pay Plaintiff the overtime compensation due her, Defendants have violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

56.     Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

57.     Defendant Ayala is personally liable herein for violations of the FLSA, as he: (a) personally oversaw payments (and exemption status) to employees (such as Plaintiff); (b) oversaw the terms and conditions of employment for employees such as Plaintiff; and (c) was personally involved in Plaintiff's compensation including but not limited to non-payment of proper overtime to Plaintiff.[4]

## COUNT II
## Violations of the Pennsylvania Minimum Wage Act ("PMWA")
### (Unpaid Overtime Compensation)
### -Against Both Defendants-

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Plaintiff is not properly paid for all owed overtime as explained *supra*. And such actions constitute indefensible violations of the Pennsylvania Minimum Wage Act ("PMWA").

---

[4] *Narodetsky v. Cardone Indus., Inc.*, 2010 U.S. Dist. LEXIS 16133, 2010 WL 678288 (E.D. Pa. 2010)(management may be individually liable under the FLSA for involvement in payroll and/or terminations from employment).

60.     Plaintiff therefore seeks all remedies permitted under the PMWA for unpaid overtime wages, as well as penalties and interest.

61.     Defendant Ayala is personally liable herein for violations of the PMWA, as he: (a) personally oversaw payments (and exemption status) to employees (such as Plaintiff); (b) oversaw the terms and conditions of employment for employees such as Plaintiff; and (c) was personally involved in Plaintiff's compensation including but not limited to non-payment of proper overtime to Plaintiff.

**COUNT III**
**Violations of the Pennsylvania Wage Payment and Collection Law ("WPCL")**
**(Non-payment of wages / Unlawful Wage Retention)**
**-Against Both Defendants-**

62.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.     Plaintiff has a verbal and written agreement with Defendants whereby Defendants have agreed to compensate Plaintiff for all services she performs during her employment at rate of $13.00 per hour.

64.     Defendants have failed to compensate Plaintiff for all wages owed during her employment from on or about June 20, 2021, leading up to February 16, 2026.

65.     Instead of properly paying Plaintiff her promised and agreed upon pay rate of $13.00 per hour, Defendants have instituted an illegal payroll scheme wherein they unilaterally reduced/changed Plaintiff's hourly, defined, and agreed upon rate without Plaintiff's consent and without providing any notice.

66.     Plaintiff was never informed by Defendants that $13.00 per hour was not her correct pay rate or that they had changed her pay rate.

67.     In fact, when Plaintiff inquired with Defendants as to why she has not been paid correctly, Defendants' management has consistently made-up convoluted explanations as to why they believed they were in fact paying her $13.00 per hour.

68.     Plaintiff has performed the agreed-upon services for Defendants, and Defendants continued to fail to properly compensate Plaintiff for the services rendered at her hourly rate as assured, previously agreed upon, and contractually owed until very recently.

69.     These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

70.     Defendant Ayala is personally liable herein for violations of the PWCL, as he: (a) personally oversaw payments (and exemption status) to employees (such as Plaintiff); (b) oversaw the terms and conditions of employment for employees such as Plaintiff; and (c) was personally involved in Plaintiff's compensation including but not limited to non-payment of proper overtime to Plaintiff.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to back pay, overtime wages, benefits, and other damages permitted by law;

B.     Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct;

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: March 9, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Jasmin Cabrera | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Red Lion Home Care, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 3/9/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Defendants place of business_ _____

---

*RELATED CASE IF ANY:*    Case Number:_____    Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☒ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)* _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒    Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐    None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CABRERA, JASMIN

**DEFENDANTS**

RED LION HOME CARE, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff   Lebanon
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | |    28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 470 Racketeer Influenced and |
|    Student Loans | ☐ 340 Marine |    Injury Product | |    New Drug Application |    Corrupt Organizations |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets |    (15 USC 1681 or 1692) |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** |    Act of 2016 | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☒ 710 Fair Labor Standards | |    Protection Act |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage |    Relations | ☐ 862 Black Lung (923) |    Exchange |
| | ☐ 362 Personal Injury - |    Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| |    Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |    Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** |    Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Agency Decision |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |    State Statutes |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA (29USC201)

Brief description of cause:
Violations of the FLSA, PMWA and the PWCL.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   3/9/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____